UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | § | |
| *ex rel*. JEFFREY LIVINGSTON, | § | |
| Plaintiff, | § | |
| | § | |
| VS. | § | CIVIL ACTION NO. |
| | § | |
| CHRISTUS HEALTH AND | § | |
| CHRISTUS HEALTH SOUTHEAST | § | |
| TEXAS, INDIVIDUALLY AND | § | |
| D/B/A CHRISTUS HOSPITAL-ST. | § | |
| ELIZABETH, CHRISTUS HOSPITAL-ST. | § | |
| MARY, CHRISTUS SOUTHEAST | § | |
| TEXAS-ST. ELIZABETH AND | § | |
| CHRISTUS SOUTHEAST TEXAS-ST. | § | |
| MARY | § | |
| Defendants | § | **FILED UNDER SEAL** |

## ORIGINAL COMPLAINT

Relator, Jeffrey Livingston, on behalf of the United States of America, through his

counsel, for his original complaint, alleges:

### I.

### INTRODUCTION

1.      This is a civil action to recover damages and civil penalties on behalf of the United States

of America arising from Defendants Christus Health and Christus Health Southeast Texas,

individually and d/b/a Christus Hospital-St. Elizabeth, Christus Hospital-St. Mary, Christus

Southeast Texas-St. Elizabeth and Christus Southeast Texas-St. Mary's ("Christus") intentional

avoidance of the payment of penalties owed by Christus to the United States.

2.      Christus has possession or control of money used, or to be used by the United States, and

knowingly delivered, or caused to be delivered, less than all of that money.

3.      Christus knowingly made, used, or caused to be made or used, a false record or statement material to an obligation to pay or transmit money to the United States.

4.      Christus knowingly concealed or knowingly and improperly avoided or decreased an obligation to pay or transmit money to the United States.

5.      The conduct by Christus was in violation of the False Claims Act, 31 U.S.C. §§3729-3733, as amended ("FCA").

## II.

## JURISDICTION AND VENUE

6.      This Court has jurisdiction over this action under 31 U.S.C. §3732 and 28 U.S.C. §1345, since the Defendants transacted business in this District.

7.      Venue is proper in the Southern District of Texas under 31 U.S.C. §3732 and 28 U.S.C. §1391(b) and (c) because the Defendants transacted business in this District.

## III.

## PARTIES

## RELATOR

8.      Relator is an individual who is a citizen of the United States, suing on behalf of the Centers for Medicare & Medicaid Services, a branch of the Department of Health and Human Services, and the Department of Defense, Defense Health Agency, both of which are agencies and instrumentalities of the United States and their operations and obligations are paid by funds from the United States Treasury.

9.      From August 2012 until June 2015, Relator was the Administrator for the Christus Dubuis Hospitals in Beaumont and Port Arthur, Texas.  Due to his prior success in hospitals in California, Relator was hired by Christus to correct a Medicare CMS Validation survey which

was leading to the termination of the Medicare program at the hospitals. Relator has personal and specialized knowledge regarding the matters at issue in this case.

**DEFENDANTS** — **NO SERVICE IS REQUESTED ON DEFENDANTS**

10.    Christus Health is a Domestic Nonprofit Corporation with its principal place of business in Texas.

11.    Christus Health Southeast Texas, individually and d/b/a Christus Hospital-St. Elizabeth, Christus Hospital-St. Mary, Christus Southeast Texas-St. Elizabeth and Christus Southeast Texas-St. Mary is a Domestic Nonprofit Corporation with its principal place of business in Texas.

**TRUE PARTY**

12.    This True Party in Interest action is filed on behalf of the United States which has not yet chosen to intervene. As such, the complaint may be served on the appropriate representatives of the United States.

13.    The Secretary of Defense, Ashton Carter, may be served with the complaint at 1000 Defense Pentagon, Washington, D.C. 20301-1000.

14.    The Secretary of Health & Human Services, Sylvia Mathews Burwell, may be served with the complaint at 200 Independence Avenue S.W., Washington, D.C. 20201.

15.    United States Attorney General, Loretta E. Lynch, may be served with the complaint at United States Department of Justice, 950 Pennsylvania Avenue, Washington, D.C. 20530-0001.

16.    United States Attorney for the Southern District of Texas, Kenneth Magidson, may be served at 1000 Louisiana, Ste. 2300, Houston, TX 77002.

## IV.

## BACKGROUND

17.　The majority of the documentary evidence necessary to prove the allegations in this Complaint is in the exclusive possession of either Christus or the United States Government.

18.　Because Relator was unjustly terminated by Christus for raising the issues described in this Complaint, Relator does not have access to all of the information regarding the specific claims relating to the manipulative scheme implemented by Christus specifically designed and calculated to avoid payment of penalties to the United States. As such, this information is in the exclusive possession and control of Christus and/or the United States Government.

19.　The Emergency Medical Treatment and Active Labor Act ("EMTALA") is a statute which governs when and how a patient may be (1) refused treatment or (2) transferred from one hospital to another when he or she is in an unstable medical condition. EMTALA was passed as part of the Consolidated Omnibus Budget Reconciliation Act of 1986, referred to as the COBRA law. EMTALA is Section 1867(a) of the Social Security Act, within the section of the United States Code which governs Medicare. The purpose of the statute is to prevent hospitals from rejecting patients, refusing to treat them, or transferring them to "charity hospitals" or "county hospitals" because they are unable to pay or are covered under the Medicare or Medicaid programs.

20.　In 2012, Section 3025 of the Affordable Care Act established the Hospital Readmissions Reduction Program. The Hospital Readmissions Reduction Program imposes penalties on hospitals deemed to have "excess readmissions." The Hospital Readmissions Reduction Program was designed to make hospitals pay closer attention to what happens to their patients after they were discharged and to increase home health services to avoid costly readmissions.

Readmissions for Medicare patients are typically for one of five conditions:  heart failure, heart attack, pneumonia, chronic lung problems or elective hip or knee replacement.  The Hospital Readmissions Reduction Program requires the Centers for Medicare & Medicaid Services to reduce payments to hospitals with excess readmissions, effective for discharges beginning on October 1, 2012.  In essence, hospitals are penalized by Medicare for having patients readmitted within thirty (30) days of discharge.  The fines are applied to all Medicare payments for the fiscal year and the maximum penalty could be up to 3% of the Medicare revenue.

21.     In 1997, the Department of Defense implemented a nationwide managed care program for the Military Health System, known as TRICARE.  TRICARE continues to serve as the health care program of the United States Department of Defense, Defense Health Agency.

V.

**APPLICABLE STATUTES**

**FALSE CLAIMS  31 U.S.C. §§3729-3733**

22.     The applicable portions of the FCA provide liability to a person or corporation who:

1)     has possession, custody, or control of property or money used, or to be used, by the Government and knowingly delivers, or causes to be delivered, less than all of that money or property;

2)     knowingly makes, uses, or causes to be made or used, a false record or statement material to an obligation to pay or transmit money or property to the Government, or knowingly conceals or knowingly and improperly avoids or decreases an obligation to pay or transmit money to property to the Government.

23.     The purpose of the False Claim Act is to discourage fraud against the government.  The purpose of qui tam provisions of the Act is to encourage individuals, such as Relator, with knowledge of the fraud to come forward and expose the violators.  A corporation is liable under the FCA for fraud of an agent who acts with apparent authority even if the corporation received no benefit from the agent's fraud.

**THE HOSPITAL READMISSIONS REDUCTION PROGRAM**

24.    Section 3025 of the Affordable Care Act added section 1886(q) to the Social Security Act establishing the Hospital Readmissions Reduction Program. The Hospital Readmissions Reduction Program requires the Centers for Medicare & Medicaid Services to reduce payments to hospitals with excess readmissions, effective for discharges beginning on October 1, 2012. The regulations that implement this provision are found in subpart I of 42 CFR part 412 (§412.150 through §412.154). "Readmission is the case of an individual who is discharged from an applicable hospital, the admission of the individual to the same or another applicable hospital within a time period of 30 days from the date of such discharge." The methodology for determining the monetary penalties under the Hospital Readmission Reductions Program are specified in §§ 412.152 and 412.154.

**EMERGENCY MEDICAL TREATMENT & LABOR ACT (EMTALA)**

25.    In 1986, Congress enacted the Emergency Medical Treatment & Labor Act (EMTALA) to ensure public access to emergency services regardless of ability to pay. 42 U.S.C. § 1395dd. EMTALA is a federal law that requires anyone coming into an emergency department to be stabilized and treated, regardless of their insurance status or ability to pay. EMTALA basically governs when and how a patient may be (1) refused treatment or (2) transferred from one hospital to another when he or she is in an unstable medical condition. EMTALA was enacted as part of the Consolidated Omnibus Budget Reconciliation Act (COBRA) of 1985.

26.    Section 1867 of the Social Security Act imposes specific obligations on Medicare-participating hospitals that offer emergency services to provide a medical screening examination when a request is made for examination or treatment for an emergency medical condition, including active labor, regardless of an individual's ability to pay. Hospitals are then required to

provide stabilizing treatment for patients with emergency medical conditions. If a hospital is unable to stabilize a patient within its capability, or if the patient requests, an appropriate transfer should be implemented. A hospital found to be in violation of EMTALA is subjected to civil monetary penalties under 42 U.S.C. § 1395dd (d).

## VI.

## STATEMENT OF FACTS

27.     Christus Southeast Texas Health System is one of the largest in the Christus Health system as well as the health care leader in Southeast Texas. Two of Christus' local hospital campuses include St. Elizabeth Hospital in Beaumont, Texas and St. Mary Hospital in Port Arthur, Texas. These hospitals include outpatient medical facilities, wellness centers, specialty health centers, and medical office buildings.

28.     St. Elizabeth Hospital is a 431-bed acute care and trauma center and is a claimed regional leader in spine and orthopedics, cardiology, oncology, general surgery, critical care and trauma, birthing, neonatal care, and bariatrics. St. Elizabeth Hospital is the largest magnet hospital between Houston, TX and Baton Rouge, LA.

29.     St. Mary Hospital is a 227-bed acute care hospital which provides comprehensive services including orthopedics, cardiology, oncology, general surgery, birthing, and neonatal care. St. Mary is designated as a Level IV Trauma Center and is the only state-designated trauma services provider locally.

30.     Christus Dubuis Hospitals in Beaumont and Port Arthur, Texas are specialty hospitals known as Long Term Acute Care Hospital (LTACH). Each LTACH is housed in a host hospital or Short Term Acute Care Hospital (STACH). All of these facilities are owned by Defendant. Christus St. Elizabeth is the host hospital in Beaumont, Texas and Christus St. Mary is the host

hospital in Port Arthur, Texas. There is a process enacted by Christus which must be adhered to in order to transfer a LTACH patient to STACH. Each LTACH and STACH has a Medicare license.

31.     As discussed above, in 2012, the Affordable Care Act, (a/k/a Obama-Care), implemented 30 day readmission penalties for Medicare patients in STACH hospitals. These penalties were designed to cut down on Medicare costs for readmission by incentivizing hospitals to focus on patient education, quality care, and increase home health services to avoid costly readmissions. Penalties could be up to 3% of all Medicare revenues for a given hospital in a fiscal year. In essence, if a hospital admits the same Medicare patients twice in a 30 day period during the year, that same hospital must potentially revert up to 3% of its total Medicare STACH revenue for that year back to the United States. It is notable that there is no minimum acceptable threshold—that potentially one Medicare patient readmitted within 30 days could trigger penalties. Specifically as to Christus, the Medicare in-patient revenue for the whole system is approximately $2.7 billion and a 3% penalty would be $81 million. The bulk of Christus' system business is STACH.

32.     In order to purposely and systematically circumvent the readmission penalties, Christus developed and implemented the Patient Intake Center (PIC) at all of their STACH facilities in December of 2012. The function of the PIC was two-fold: 1) deny admission or bed assignment to patients that fell within 30 days of a prior discharge; and 2) deny transfer of LTACH patients to STACH. In short, Christus developed a process to deny appropriate medical care to patients in order to avoid the payment of penalties—including patients covered by Medicare and TRICARE.

33.     As part of its new process, Christus required all transfers of LTACH patients or the admissions of STACH patients be approved through the PIC before admitting a particular patient into the hospital.  The PIC would review the diagnostic information from the physician and the patient's medical and admissions history.  If the patient had an admission within the last 30 days, the PIC would deny readmission.  The patient would ultimately be treated in the Emergency Room and discharged home.  If a transfer was sought by a LTACH patient, the patient would be referred to hospice or, if a procedure was necessary, the procedure was sometimes performed at bedside in order to prevent a readmission by the LTACH patient into the STACH facility.  This was done under the auspices of convenience.  However, bedside procedures have resulted in potentially serious outcomes due to improper bedside positioning for procedures which requires certain positioning of the patient.  Although Christus would claim "administrative reasons" as the reason for denial, Christus was in fact avoiding payment of readmission penalties to the United States.

34.     The PIC made the decision whether to deny care—regardless of the recommendation by the physician.  In fact, the ultimate decision is made by a Registered Nurse.   The denial of care decisions being made by the Registered Nurse are completely outside the scope of practice and are made as if the Registered Nurse were licensed to practice medicine as a physician.  In short, the Registered Nurses were overriding the admission recommendation of the physician.

35.     In addition to the denial of patients attempting to be readmitted, employees of the PIC were essentially educated not to accept LTACH patients into the STACH facility.  As a result of the lack of readmissions and substandard care of their patients by Christus, physicians began revoking their privileges at Christus hospitals.

36.    Christus manipulated its internal system by the creation of the PIC which required approval before any patient could be admitted into the STACH.  Not surprisingly, Christus created the PIC in December 2012—2 months after the October 1, 2012 effective date for penalties to apply to readmissions.  Furthermore, Christus educated its employees working in the PIC to deny readmissions to patients who had been previously admitted within the prior 30 days.

37.    By denying admission to patients who had been admitted in the 30 days, Christus avoided an obligation to pay money, i.e. penalties, to the Government.  As such, Christus knowingly delivered or caused to be delivered less than all of the money owed to the Government and knowingly avoided an obligation to pay money to the Government.

38.    Had Christus properly readmitted its patients, Christus would have been subjected to up to 3% of its total Medicare revenue for the year in penalties and the Government would have garnered a significant amount of money back into the Medicare programs.  Instead, Christus created an internal scheme whereby it avoided the penalties which would have been assessed by and paid to the Government.  As a result, Christus cheated the Government out of millions of dollars in Medicare funds.

39.    The action by Christus in creating a manipulative system to avoid paying penalties to the Government at the expense of ailing patients is reprehensible.  However, while Medicare, TRICARE and the Government have been negatively impacted based on Christus' conduct, Christus has substantially benefitted because it had retained and continues to retain the funds paid to it by Medicare and TRICARE.

40.    Christus purposefully manipulated its internal system by creating the PIC and educating its employees to routinely deny readmissions and LTACH transfers.  Christus engaged in this illegal activity with the knowledge that it would avoid its obligation to pay penalties to the

Government and has done so all while financially benefitting from its own deception. As a result, Christus has avoided the payment of millions of dollars in penalties to the United States Government.

## VII.

### CAUSES OF ACTION

41.    This is an action brought on behalf of and with the United States under the FCA, 31 U.S.C. § 3729 et seq. against Christus.

42.    All of the preceding allegations are incorporated herein.

43.    Christus has possession, custody, or control of money used, or to be used, by the Government and knowingly delivered, or caused to be delivered, less than all of that money.

44.    Christus knowingly made, used, or caused to be made or used, a false record or statement material to an obligation to pay money to the Government.

45.    Christus knowingly concealed or knowingly and improperly avoided or decreased an obligation to pay money to the Government.

46.    Christus knowingly violated the False Claims Act, as that term is defined in 31 U.S.C. § 3729(b).

47.    Christus violated the Emergency Medical Treatment and Labor Act.

48.    Christus violated the Hospital Readmissions Reduction Program.

## VIII.

### FALSE CLAIMS ACT RETALIATION VIOLATION

49.    All of the preceding allegations are incorporated herein.

50.    Relator bring this action for retaliation against Christus under 31 U.S.C. § 3730(h).

51.     Relator attempted to find ways to work within the PIC system and still provide treatment and care to his LTACH patients.  LTACH patients were routinely denied transfer to the STACH facility by the PIC.  In 2013, Relator raised his concerns in emails to the PIC.  The response from PIC was that the processes in question were protocol, and it was suggested by the PIC that Relator's hospital not transfer patients to the STACH at all.

52.     Thereafter, Relator brought his concerns regarding the random denial of care to the Christus Corporate office and to the St. Elizabeth and St. Mary's Leadership.  Relator refused to just "fall in line" and continued to voice his concerns about the PIC and the denial of readmissions.  In one particular denial of admission of a patient, Relator sought a case review by the former Systems Director of Clinical Services.   The former Systems Director of Clinical Services agreed with Relator but his finding was ultimately vetoed.   Shortly thereafter, the former Systems Director of Clinical Services was terminated and Relator was terminated 2 weeks later in June 2015.

53.     Relator repeatedly questioned the random denial of care of patients and expressed his concern to Christus that the above referenced conduct by Christus was in violation of federal laws, including obligations under Medicare.

54.     Relator had numerous encounters with Christus management and verbally objected to and refused to conspire or participate in the illegal activity.

55.     Christus retaliated against Relator for his complaints and for his refusal to cooperate in Christus' scheme to avoid readmission penalties.

56.     Christus' actions have damaged Relator in an amount to be determined at trial.

IX.

## JURY DEMAND

57.    Relator requests a trial by jury.

X.

## PRAYER

As to the Relator, on behalf of the United States government, requests the following:

1.    judgment against Defendants for treble the amount of damages to United States government to be determined, and all allowable penalties, fees and costs under the FCA, as amended;

2.    judgment against Defendants in the amount of the benefit the United States conferred upon Defendants, pre-judgment interest, plus fees and costs, and a judgment declaring that those amounts are rightfully the property of the United States, and that Defendants hold said proceeds in trust for the use and benefit of the United States; and

3.    all other relief this Court may deem just and equitable.

As to the cause of action for Retaliation, Relator requests the following:

1.    compensation for lost wages, benefits and other remuneration, including but not limited to back pay and front pay;

2.    interest on the back pay and front pay;

3.    payment of reasonable costs, disbursements and attorneys' fees;

4.    pre-judgment and post-judgment interest;

5.    punitive damages; and

6.    all other relief this Court may deem just and equitable.

Respectfully submitted,

STRONG PIPKIN BISSELL & LEDYARD, L.L.P.

*/s/ Greg M. Dykeman*
_____

Greg M. Dykeman
State Bar No. 06325100
Stacie Augustine
State Bar No. 24050239
14th Floor, San Jacinto Building
595 Orleans
Beaumont, Texas  77701-3255
Tel:  (409) 981-1120
Fax: (409) 981-1010
gdykeman@strongpipkin.com
saugustine@strongpipkin.com

MOORE LANDREY LLP

Tommy L. Yeates
State Bar No. 22151100
Heather L. Blackwell
State Bar No. 24006854
905 Orleans
Beaumont, Texas 77701
Tel:  (409) 835-3891
Fax: (409) 835-2707
tyeates@moorelandrey.com
hblackwell@moorelandrey.com

ATTORNEYS FOR RELATOR,
JEFFREY LIVINGSTON

CERTIFICATE OF SERVICE

I hereby certify that a Motion to File Complaint Under Seal has been filed.

*/s/ Greg M. Dykeman*
_____

Greg M. Dykeman